**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| FERID ALLANI<br>Plaintiff,<br>v.<br>APPLE, INC.,<br>Defendant. | CIVIL ACTION NO. 6:24-cv-304<br><br>JURY TRIAL DEMANDED |

# ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ferid Allani ("Allani"), for its Complaint against Defendant Apple, Inc. ("Apple"), alleges as follows:

## THE PARTIES

1. Plaintiff Ferid Allani is a French citizen residing at Villa Elite 1, residence Mahogany, chemin vingt pieds, 30513, Grand Baie, Ile Maurice.

2. On information and belief, Defendant Apple is a California corporation with registered and established places of business in this District at 12545 Riata Vista Circle, Austin, Texas 78727; 12801 Delcour Drive, Austin, Texas 78727; and 3121 Palm Way, Austin, Texas 78758. Apple may be served with process through its registered agent, the CT Corp System, at 1999 Bryan St., Ste. 900 Dallas, Texas 75201-3136. Apple is registered to do business in the State of Texas and has been since at least May 16, 1980.

3. On information and belief, Apple regularly conducts and transacts business in the State of Texas, throughout the United States, and within this District, and as set forth below, has committed and continues to commit, tortious acts of infringement within and outside the State of Texas and within this District.

4. Apple sells and offers to sell products and services throughout Texas, including in this judicial District, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial District.

5. Apple's products are offered for sale through numerous mobile carriers in this judicial District, including, but not limited to Verizon stores at 2812 W Loop 340 Suite# H-12, Waco, TX 76711; 1820 S Valley Mills Dr, Waco, TX 7671; and 3590 Greenlawn Blvd Suite 103, Round Rock, TX 78664; T-Mobile Stores at 2448 W Loop 340 Suite 24a, Waco, TX 76711 and 208 Hewitt Dr Suite #200, Waco, TX 76712; and AT&T Stores at 4330 W Waco Dr, Waco, TX 76710; 2320 W Loop 340 #100A, Waco, TX 76711; and 1515 Hewitt Dr Ste A, Waco, TX 76712 (collectively, "Waco and Austin Carrier Stores"). On information and belief, Apple products relevant to the allegations in this Complaint have been sold and used at the Waco and Austin Carrier Stores, and are offered for sale at the Waco and Austin Carrier Stores.

6. Apple also owns and operates Apple Stores in multiple locations in this District including stores at 3121 Palm Way, Austin, TX 78758; 2901 S. Capital of Texas Hwy, Austin, TX 78746; 15900 La Cantera Parkway, San Antonio, TX 78256; 7400 San Pedro Avenue, San Antonio, TX 78216; and 8401 Gateway Boulevard West, El Paso, TX 79925 where accused Apple products relevant to the allegations in this Complaint have been sold and used, and offered for sale.

7. Apple also operates a growing $1 billion campus in this District at W. Parmer Ln. & Dallas Dr., Austin, TX 78729. On information and belief, and according to publicly available reports, the Apple Austin campus will initially employ over 5000 people with the ability to employ up to 15,000 people. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited February 6, 2024).

## JURISDICTION AND VENUE

8. This action is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code ("U.S.C.") §1 et seq., including 35 U.S.C. §§ 271 and 281-285. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

9. This Court has personal jurisdiction over Apple by virtue of its systematic and continuous contacts with this jurisdiction, as alleged herein, as well as because the injury to Mr. Mr. Allani occurred in the State of Texas and the claim for relief possessed by Mr. Allani against Apple for that injury arose in the State of Texas. On information and belief, Apple has purposely availed itself of the privileges of conducting business within the State of Texas, such business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products or services into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly transacting or soliciting business, engaging in other persistent courses of conduct, or deriving or attempting to derive substantial revenue and financial benefits from goods and services provided to individuals residing in the State of Texas and in this District. Thus, Apple is subject to this Court's specific and general personal jurisdiction under due process and the Texas Long Arm Statute.

10. Personal jurisdiction also exists specifically over Apple because Apple, directly or through subsidiaries or intermediaries (including customers, distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, licenses, sells, imports, advertises, or markets in the State of Texas and in this District, one or more products or services that infringe the Patents-in-Suit, as described particularly below. Apple has purposefully and

voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the awareness and/or intent that these products and/or services will be purchased or used by consumers in this District. Apple has knowingly and purposefully shipped infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased and used by consumers in this District.

11. Mr. Allani's claim for relief for patent infringement arises directly from the activities of Apple in this District.

12. On information and belief, Apple, directly and/or through its customers has transacted business in this District and has committed acts of patent infringement in this District. By virtue of its offices in this District, Apple has a regular and established place of business in this District. Thus, venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND OF THE TECHNOLOGY AND THE PATENTS-IN-SUIT

13. United States Patent No. 8,271,877 (the "'877 patent") entitled "Method and Device for Accessing Information Sources and Services on the Web" was duly and legally issued by the United States Patent and Trademark Office on September 18, 2012 after full and fair examination. A copy of the '877 patent is attached hereto as Exhibit 1.

14. The '877 patent is valid and enforceable. It expired on April 18, 2024.

15. The '877 patent claims priority to a French patent filed on December 30, 1999 under the number FR 2 803 929 and issued on September 17, 2004 under the number FR 99 16704 and now expired.

16. United States Patent No. 10,943,058 (the "'058 patent") entitled "Method and Device for Accessing Information Sources and Services on the Web" was duly and legally issued

by the United States Patent and Trademark Office on March 9, 2021 after full and fair examination. A copy of the ’058 patent is attached hereto as Exhibit 2.

17. The ’058 patent is valid and enforceable. It expired on July 27, 2021.

18. The ’058 patent is a divisional of the ’877 patent.

19. The ’877 and ’058 patents are referred to in this Complaint as the “Patents-in-Suit”.

20. Mr. Allani is the sole owner and assignee of the entire right title and interest in the Patents-in-Suit and has the right to sue and recover damages for any current or past infringement of the Patents-in-Suit. The inventions of the Patents-in-Suit originated from breakthrough work and development in the internet communications field.

21. In 1986, Mr. Allani founded the company Securinfor, which specialized in the outsourcing of computer parts. Mr. Allani was the president of the company from 1990 to 2013. Following his departure from Secureinfor, Mr. Allani became the chairman and CEO of All Net France, which he launched with his son Sedrik Allani and his daughter Cyrine Allani on July 1, 1998. All Net aimed to imagine new uses for existing telephone booths around the world and to design telecommunications and office equipment intended to replace telephone devices installed in telephone booths.

22. On October 8, 1998, All Net filed a French patent application relating to a public information terminal known as PUBLICDESK™. The French application ultimately led to U.S. Patent No. 6,876,737, which issued on April 5, 2005 and names Sedrik Allani and Cyrine Allani as inventors.

23. During the development of PUBLICDESK™, Mr. Allani observed that it was very difficult for the average person to easily access the information or services that they needed on the Web. Accessing websites required using browser software providing search engines. Search

engines such as “Internet Explorer”, “Navigator”, “Yahoo”, or even “Voila” were characterized by the quantity and density of more or less relevant information that they provided. They therefore had the disadvantage of losing users because, without providing the full URL address of the site sought, the user was confronted with hundreds of thousands of results that did not always match what the user was looking for.

24. Additionally, searching for information using these search engines could prove to be long, tedious, uncertain, and costly due to network problems, server capacity, and variable communication costs. Search engines also were hard to use for users unfamiliar with how to use them.

25. With the browsers available at that time, it was apparent to Mr. Allani that one could get lost on the Web, resulting in high connection costs and user frustration. Furthermore, at that time, the rate of microcomputer equipment was low among the general population and there was not yet a supply of mobile communications equipment.

26. Initially, Mr. Allani wanted to offer to the general population, on digital kiosks or booths installed in public places, a tool for easy access to resources on the Web, with the aim that users can access them the desired information and services easily and quickly. Mr. Allani realized that this access tool could also be implemented in mobile communications equipment. In 1999, several phone models connected to Interent were already available and sold for example by Nokia and Fujitsu.

27. All Net set up a development partnership with the French telecommunications group France Telecom, designed sets of selection pages to be loaded in communications equipment operated by France Telecom. But the French operator decided to stop the project. Nevetheless, Mr. Allani continued to pursue patent protection for his invention.

28. Mr. Allani's invention was a major technological breakthrough that allowed the user to immediately find the service and information he or she needed among the vast information available on the Web using a simple icon or series of icons. With Mr. Allani's invention, a user who needs information or a service on the Web can access it with a simple click on their communication device without having to rewrite the complete URL of the page that the user wishes to access.

29. The purpose of this invention was therefore to enable users unfamiliar with computer and Internet tools to have quick and easy access and for familiar users to gain speed and reduce the costs associated with use. To this end, Mr. Allani invented a process allowing preliminary selection steps to be carried out locally, in selection pages organized in a tree structure, to transmit on the Internet only the address of the source well-targeted information or service.

30. The claims of the Patents-in-Suit are directed to a user-friendly, ergonomic computer specific user interface for application management. Specifically, the claims of the Patents-in-Suit enhance the accessibility of application-based internet resources from a mobile device. At the time of the Patents-in-Suit, prior art mobile devices did not have a graphical user interface with icons for providing direct access to internet resources. The claims of the Patents-in-Suit are directed to an improved graphical user interface that enables a mobile device user to access internet information sources and services quicker and easier. In addition, the claims of the Patents-in-Suit allow a user to have many different applications on one device that has limited display size.

31. The claims of the Patents-in-Suit require a specific interface having a selection page with at least one selection icon and one direct access icon and at least one selection page with at least two of more direct access icons. The selection pages are locally organized on a mobile device

in a tree menu structure in order to permit the quick and easy access of internet resources. The tree menu structure also allows for multiple selection pages, which increases the number of internet resources that may be accessed through the interface. The claims of the Patents-in-Suit improve upon the prior art because no prior art mobile device provided direct access to the internet using a touchscreen graphical user interface.

32. At the time of the Patents-in-Suit, it was neither conventional nor routine for mobile devices to employ selection pages organized in the structure of a tree menu to provide direct access to internet resources. The graphical user interface implemented in the available mobile devices did not include a tree menu with both direct-access icons and selection icons.

33. The technical problem addressed by the claims of the Patents-in-Suit is minimizing the time to access a remote websites from a mobile device. At the time of the ’877 patent, conventional mobile devices did not provide a way to directly access web resources through selectable icons. The technical solution entails using selection pages organized in a tree menu structure with each selection page having a selection icon for accessing another selection page and a direct access icon for accessing the internet.

34. The claims of the Patents-in-Suit represent a disruption for mobile devices by providing for an interface with icons organized in a tree menu structure that allow the user to directly access internet resources. The claims of the Patents-in-Suit are directed to a novel and nonobvious user interface and specific improvements to the functioning of a mobile device that permit that management and accessibility of various applications in an efficient and user-friendly manner.

## PRIOR LITIGATION BETWEEN THE PARTIES

35. On December 27, 2019, Mr. Allani sued Apple and Google LLC for infringement of claims 1-8 of French Patent No. FR 2 803 929 (National registration No FR 99 16704). The case was assigned case number RG 20/01312 and was pending in the 3rd Chamber, 1st Section of the Paris Judicial Court.

36. On January 19, 2023, the Paris Judicial Court invalidated claims 1-8 of French Patent No. FR 2 803 929 based primarily on PCT Publication No. WO 99/17229 to Kanno.

37. On January 24, 2023, Mr. Allani filed an appeal of the Paris Judicial Court's decision to Pole 5, Chamber 2 of the Paris Court of Appeal. Th appeal is pending as case umber RG 23/01389.

38. On January 29, 2023, Mr. Allani filed with the French Patent Office a request for limitation of French Patent No. FR 2 803 929. On April 28, 2023, the Director General of the INPI granted the request. Consequently, claim 1 of French Patent No FR 2 803 929 is limited to a different scope than what the Paris Judicial Court had to consider. On July 3, 2023, the INPI granted a second request for limitation to correct certain drafting errors in the claims.

## OVERVIEW OF THE ACCUSED INSTRUMENTALITIES

39. Apple is a technology company that designs, develops, and sells consumer electronics, computer software, and online services.

40. Apple makes, has made, uses, has used, sells, has sold, offers for sale, and/or imports into the United States devices including mobile phones (e.g., Apple iPhone, iPhone 6, iPhone 6S, iPhone 6 Plus, iPhone 6S Plus, iPhone SE, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone 12, iPhone 12 Mini, iPhone 12 Pro, iPhone 12 Pro Max, iPhone SE (Second Generation), iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone SE (Third

Generation), iPhone 14, iPhone 14 Plus, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max; Tablet computers (e.g., iPad Air, iPad mini, and iPad Pro Tablets); Smartwatches (e.g., Apple Watch (First through Seventh Generation); and iOS enabled mobile devices (e.g., iPod Touches) (collectively, the "Accused Apple Devices").

41. The first-generation iPhone was released on June 29, 2007. All iPhones use Apple's iOS mobile operating system software. Multiple new hardware iterations with new iOS releases have been released since 2007. The iPhone's user interface is built around the device's multi-touch screen, including a virtual keyboard. The iPhone has Wi-Fi and can connect to cellular networks. The iPhone is sold with pre-installed mobile applications that are selectable via the user interface through on-screen icons.

42. The first-generation iPad was released on April 3, 2010. All iPads also use Apple's iOS mobile operating system software. Multiple new hardware iterations with new iOS releases have been released since 2010. The iPad's user interface is built around the device's multi-touch screen, including a virtual keyboard. The iPad has Wi-Fi and some versions can connect to cellular networks. The iPad is sold with pre-installed mobile applications that are selectable via the user interface through on-screen icons.

43. Additionally, beginning in 2007, Apple launched and continues to operate, use, sell, and import an operating system (e.g., iOS 1.0, iOS 2.0, iOS, iOS 3.0, iOS 4.0, iOS 5.0, iOS 6.0, iOS 7.0, iOS 8.0, iOS 9.0, iOS 10.0, iOS 11.0, iOS 12.0, iOS 13.0, iOS 14.0, iOS 15.0, iOS 16.0, iOS 17.0) along with other software (e.g., installers and the App Store app) that are pre-installed or updated on each Accused Apple Device (the "Accused Apple Software"). Apple programed and developed the Accused Apple Software specifically for its Accused Apple Devices and is directly responsible for and has direct control over the use of the Accused Apple Software.

44. Each and every iteration of the Accused Apple Software is specifically designed by Apple to cause the Accused Apple Devices to download applications from the Apple App Store ("Apple-Supported Apps") in a specific manner. More particularly, Apple is directly responsible for, and has direct control over, because of the way it programmed and developed the Accused Apple Software, each and every Accused Apple Device that is configured to execute the Accused Apple Software code to obtain Apple-Supported Apps by transmitting a request to the Apple App Store and receiving the Apple-Supported App in response to that request.

45. Moreover, each Apple-Supported App, which runs with the Accused Apple Software contains specific information that allows the user experience (including the graphical user interface) of the Apple-Supported App to be presented on the display of the Accused Apple Devices.

46. By making, selling, offering for sale, and importing the Accused Apple Devices that require the Accused Apple Software, which executes specific code to obtain, install and use Apple-Supported Apps, Apple directly infringes the Patents-in-Suit. Further, by making, selling, offering for sale, importing, operating and using the Accused Apple Software installed and running on the Accused Apple Devices that require the Accused Apple Software, which executes specific code to obtain and utilize Apple-Supported Apps, Apple directly infringes the Patents-in-Suit.

47. The Accused Apple Devices and the Accused Apple Software are referred to below as the Accused Instrumentalities.

## COUNT 1
## INFRINGEMENT OF U. S. PATENT NO. 8,271,877

48. Paragraphs 1 through 47 are incorporated by reference as if fully stated in this Count.

49. Apple, either alone or in conjunction with others, has infringed and continues to infringe, both directly and indirectly, one or more claims of the ’877 patent, including at least exemplary claim 12, under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States at least certain methods, apparatuses, products and services used for communication, including, without limitation, the Accused Instrumentalities.

50. For example, Apple infringes exemplary claim 12 of the ’877 patent by making, using, offering to sell, selling, and/or importing into the United States at least the Accused Instrumentalities as detailed in Exhibit 3 to this Complaint.

51. On information and belief, Apple has had knowledge of the ’877 patent since at least September 18, 2012 when the ’877 patent issued. After acquiring that knowledge, Apple infringed the ’877 patent and in doing so, it knew, or should have known, that its conduct amounted to infringement of the ’877 patent. Since the issuance of the ’877 patent, the parties have engaged in numerous communications regarding Mr. Allani’s patents, including the ’877 patent.

52. Alternatively, Apple has had knowledge of the ’877 patent since at least November 2, 2012 based on a letter that Mr. Allani sent Apple notifying Apple of the ’877 patent. Since that time, Apple and Mr. Allani have engaged in numerous communications regarding Mr. Allani’s patents, including the ’877 patent. Through subsequent correspondence, Mr. Allani informed Apple how the Accused Instrumentalities practiced one or more claims of the ’877 patent. In addition, on or about June 27, 2013, Mr. Allani met with representatives from Apple at Apple’s offices in Sunnyvale, California. At the meeting, Mr. Allani further explained how the Accused Instrumentalities practice the ’877 patent and discussed a potential business arrangement concerning the ’877 patent. Mr. Allani explained the value of his patents to Apple and offered to

license his patents in good faith. Apple reviewed Mr. Allani's patents and advised Mr. Allani that it was not interested in taking a license. Apple, however, failed to provide Mr. Allani any legitimate basis as to why it does not need license despite being subjectively aware of the risk that its conduct constituted infringement.

53. After acquiring knowledge on the '877 patent, Apple infringed the '877 patent and in doing so, it knew, or should have known, that its conduct amounted to infringement of the '877 patent. Apple's continued infringement the '877 patent unabated by Mr. Allani's notice of the '877 patent constitutes willful and deliberate infringement.

54. The parties also have been engaged in litigation regarding Mr. Allani's French Patent No. FR 2 803 929 since December 27, 2019. The parties have also engaged in multiple settlement discussions concerning Mr. Allani's patents, including the '877 patent. Through these actions, Apple has acquired intimate knowledge of Mr. Allani's patents and its infringement of those patents. Apple also has acquired knowledge through monitoring Mr. Allani's patents at least since the time that the parties have been engaged in litigation.

55. Alternatively, Apple has had knowledge of the '877 patent and its infringement of the '877 patent based at least on the filing of this Complaint.

56. Despite its knowledge and notice of the '877 patent as of at least the filing of this Complaint, Apple has continued to make, use, sell, offer to sell, and/or import the Accused Instrumentalities in the United States in a manner that infringes the '877 patent. Apple knew or should have known that its actions constituted infringement of the '877 patent. Upon information and belief, Apple has failed to take adequate steps to avoid infringing the '877 patent, despite having been on notice of and lacking permission to practice the '877 patent. Upon information

and belief, Apple will continue to reap significant revenues and savings based on its infringement of the ’877 patent. Accordingly, Apple’s infringement has been and continues to be willful.

57. Apple has induced infringement, and continues to induce infringement, of one or more claims of the ’877 patent under 35 U.S.C. § 271(b). Apple actively, knowingly, and intentionally induced, and continues to actively, knowingly and intentionally induce infringement of the ’877 patent by: making, using, offering for sale, selling, importing, or otherwise making available and/or supplying the Accused Instrumentalities; with the knowledge and specific intent that third parties will use the Accused Instrumentalities supplied by Apple to infringe the ’877 patent; and with the knowledge and specific intent to encourage and facilitate third party infringement through the dissemination of the Accused Instrumentalities and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Instrumentalities.

58. Apple specifically intended and was aware that the ordinary and customary use of the Accused Instrumentalities would infringe the ’877 patent. For example, Apple makes, offers for sale, sells, uses, imports, makes available, and/or provides the Accused Instrumentalities, which, when used in their ordinary and customary manner as intended by Apple, infringe one or more claims of the ’877 patent, including at least exemplary claim 12. Upon information and belief, Apple further provides product manuals and other technical information that cause Apple customers and other third parties to use and to operate the Accused Instrumentalities for their ordinary and customary use. Apple customers and other third parties have directly infringed the ’877 patent, including at least exemplary claim 12, through the normal and customary use of the Accused Instrumentalities. By providing services and device configurations for enabling the Accused Instrumentalities, and instruction and training to customers and other third parties on how

to use the Accused Instrumentalities in an infringing manner, Apple specifically intended to induce infringement of the ’877 patent, including at least exemplary claim 12. Apple accordingly has induced and continues to induce Apple customers and other users of the Accused Instrumentalities in their ordinary and customary way to infringe the ’877 patent, knowing, or at least being willful blind to the fact, that such use constitutes infringement of the ’877 patent.

59. Apple has contributed and continues to contribute to the infringement by others, including its customers, of the ’877 patent under 35 U.S.C. § 271(c) by, among other things, making, using, selling, offering for sale within the United States and/or importing into the United States the Accused Instrumentalities for use in practicing the patented inventions of the ’877 patent, knowing that the Accused Instrumentalities and components are especially made or adapted for use in infringement of the ’877 patent, embody a material part of the inventions claimed in the ’877 patent, and are not staple articles of commerce suitable for substantial non-infringing use. Apple’s customers directly infringe the ’877 patent by using the Accused Instrumentalities.

60. Mr. Allani has been and continues to be damaged by Apple’s infringement of the ’877 patent.

61. Apple’s conduct in infringing the ’877 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**COUNT 2**
**INFRINGEMENT OF U. S. PATENT NO. 10,943,058**

62. Paragraphs 1 through 61 are incorporated by reference as if fully stated in this Count.

63. Apple, either alone or in conjunction with others, has infringed and continues to infringe, both directly and indirectly, one or more claims of the ’058 patent, including at least exemplary claim 27, under 35 U.S.C. § 271, either literally and/or under the doctrine of

equivalents, by making, using, offering to sell, selling, and/or importing into the United States at least certain methods, apparatuses, products and services used for communication, including, without limitation, the Accused Instrumentalities.

64. For example, Apple infringes exemplary claim 27 of the ’058 patent by making, using, offering to sell, selling, and/or importing into the United States at least the Accused Instrumentalities as detailed in Exhibit 4 to this Complaint.

65. On information and belief, Apple has had knowledge of the ’058 patent since at least March 9, 2021 when the ’058 patent issued. After acquiring that knowledge, Apple infringed the ’058 patent and in doing so, it knew, or should have known, that its conduct amounted to infringement of the ’058 patent. Since the issuance of the ’058 patent, the parties have engaged in numerous communications regarding Mr. Allani’s patents, including the ’058 patent.

66. The parties also have been engaged in litigation regarding Mr. Allani’s French Patent No. FR 2 803 929 since December 27, 2019. The parties have also engaged in multiple settlement discussions concerning Mr. Allani’s patents, including the ’058 patent. Through these actions, Apple has acquired intimate knowledge of Mr. Allani’s patents and its infringement of those patents. Apple also has acquired knowledge through monitoring Mr. Allani's patents at least since the time that the parties has been engaged in litigation, including the ’058 patent.

67. Alternatively, Apple has had knowledge of the ’058 patent and its infringement of the ’058 patent based at least on the filing of this Complaint.

68. Despite its knowledge and notice of the ’058 patent as of at least the filing of this Complaint, Apple has continued to make, use, sell, offer to sell, and/or import the Accused Instrumentalities in the United States in a manner that infringes the ’058 patent. Apple knew or should have known that its actions constituted infringement of the ’058 patent. Upon information

and belief, Apple has failed to take adequate steps to avoid infringing the ’058 patent, despite having been on notice of and lacking permission to practice the ’058 patent. Upon information and belief, Apple will continue to reap significant revenues and savings based on its infringement of the ’058 patent. Accordingly, Apple’s infringement has been and continues to be willful.

69. Apple has induced infringement, and continues to induce infringement, of one or more claims of the ’058 patent under 35 U.S.C. § 271(b). Apple actively, knowingly, and intentionally induced, and continues to actively, knowingly and intentionally induce infringement of the ’058 patent by: making, using, offering for sale, selling, importing, or otherwise making available and/or supplying the Accused Instrumentalities; with the knowledge and specific intent that third parties will use the Accused Instrumentalities supplied by Apple to infringe the ’058 patent; and with the knowledge and specific intent to encourage and facilitate third party infringement through the dissemination of the Accused Instrumentalities and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Instrumentalities.

70. Apple specifically intended and was aware that the ordinary and customary use of the Accused Instrumentalities would infringe the ’058 patent. For example, Apple makes, offers for sale, sells, uses, imports, makes available, and/or provides the Accused Instrumentalities, which, when used in their ordinary and customary manner as intended by Apple, infringe one or more claims of the ’058 patent, including at least exemplary claim 27. Upon information and belief, Apple further provides product manuals and other technical information that cause Apple customers and other third parties to use and to operate the Accused Instrumentalities for their ordinary and customary use. Apple customers and other third parties have directly infringed the ’058 patent, including at least exemplary claim 27, through the normal and customary use of the

Accused Instrumentalities. By providing services and device configurations for enabling the Accused Instrumentalities, and instruction and training to customers and other third parties on how to use the Accused Instrumentalities in an infringing manner, Apple specifically intended to induce infringement of the ’058 patent, including at least exemplary claim 27. Apple accordingly has induced and continues to induce Apple customers and other users of the Accused Instrumentalities in their ordinary and customary way to infringe the ’058 patent, knowing, or at least being willful blind to the fact, that such use constitutes infringement of the ’058 patent.

71. Apple has contributed and continues to contribute to the infringement by others, including its customers, of the ’058 patent under 35 U.S.C. § 271(c) by, among other things, making, using, selling, offering for sale within the United States and/or importing into the United States the Accused Instrumentalities for use in practicing the patented inventions of the ’058 patent, knowing that the Accused Instrumentalities and components are especially made or adapted for use in infringement of the ’058 patent, embody a material part of the inventions claimed in the ’058 patent, and are not staple articles of commerce suitable for substantial non-infringing use. Apple’s customers directly infringe the ’058 patent by using the Accused Instrumentalities.

72. Mr. Allani has been and continues to be damaged by Apple’s infringement of the ’058 patent.

73. Apple’s conduct in infringing the ’058 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38(a), Mr. Allani demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Allani prays for the following relief:

a) A judgment and order that Apple has directly infringed (either literally or under the doctrine of equivalents) and/or indirectly infringed the Patents-in-Suit;

b) A judgment and order permanently enjoining Apple, its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns and any other person(s) in active concert or participation with Apple from directly infringing the Patents-in-Suit for the full term of the Patents-in-Suit;

c) A judgement that the infringement of the Patents-in-Suit by Apple has been willful;

d) A judgment and order requiring Apple to pay Mr. Allani an award of damages under 35 U.S.C. § 284, adequate to compensate Mr. Allani for Apple's past infringement, but in no event less than a reasonable royalty, including enhanced damages as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting, as needed, as well as damages for any continuing or future infringement up to and including the date that Apple is finally and permanently enjoined from further infringement;

e) A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Mr. Allani be awarded a compulsory ongoing licensing fee;

f) A judgment and order that this action be found an exceptional case pursuant to 35 U.S.C. § 285, entitling Mr. Allani to an award of all costs of this action, including attorneys' fees and interest;

g) A judgment and order requiring Apple to pay Mr. Allani the costs of this action;

h) A judgment and order requiring Apple to pay Mr. Allani pre-judgment and post-judgment interest on the damages award; and

i) Such other and further relief as the Court deems just and equitable.

Dated: June 3, 2024

Respectfully submitted,

By: /s/Lewis E. Hudnell, III
Lewis E. Hudnell, III
lewis@hudnellaw.com
Hudnell Law Group P.C.
800 W. El Camino Real Suite 180
Mountain View, California 94040
T: 650.564.3698
F: 650.262.1060

**ATTORNEYS FOR PLAINTIFF FERID ALLANI**